IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF EDWARD ALBART, by its personal representative David Albart, and EDWARD ALBART LIVING TRUST dated, April 5, 2001 by its Trustee, David Albart, <br><br> Plaintiffs, <br><br> v. <br><br> LAVASTONE CAPITAL LLC and U.S. BANK N.A. as Securities Intermediary, <br><br> Defendants. | Civ. No. 20-608-RGA |

**MEMORANDUM OPINION**

Donald L. Gouge, Jr., DONALD L. GOUGE, JR., LLC, Wilmington, DE; Daniel R. Miller, WALDEN MACHT & HARAN LLP, Philadelphia, PA. *Counsel for Plaintiffs*.

Kenneth J. Nachbar, Megan Ward Cascio, and Zi-Xiang Shen, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE. *Counsel for Defendants*.

March 18, 2021
Wilmington, DE

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiffs the Estate of Edward Albart (the "Estate") and the Edward Albart Living Trust dated, April 5, 2001 (the "Trust"), acting through David Albart, who is the personal representative of the Estate and trustee of the Trust, have sued Defendants Lavastone Capital LLC and U.S. Bank N.A. over a $9 million life insurance policy issued on the life of Edward Albart ("Mr. Albart") and paid to Lavastone when Mr. Albart died. Plaintiffs allege the $9 million life insurance policy is a "stranger originated life insurance" policy (i.e., a "STOLI"). STOLIs are insurance policies procured by third parties who have no relationship to the insured and, therefore, have been called "illegal wager[s] on human life." *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr., ex rel. Christiana Bank & Tr. Co.*, 28 A.3d 1059, 1070 (Del. 2011). Plaintiffs further allege that the $9 million insurance policy on Mr. Albart's life was issued without an insurable interest under 18 *Del. C.* § 2704; and the Estate (and hence the Trust) should recover the $9 million from Lavastone.

Defendants have filed a motion to dismiss or stay this action in favor of a parallel action pending before the Circuit Court for Marion County, Florida. (D.I. 8). The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. For the foregoing reasons, Defendants' motion will be denied.

I. **BACKGROUND**

　**A. The Parties**

Plaintiffs are the Estate and the Trust. The Estate was established pursuant to Florida law following the death of Mr. Albart, a resident of the State of Florida. (D.I. 1 ¶ 1). The Trust was established in Florida and is the sole beneficiary of Mr. Albart's Estate. (*Id*. at ¶ 2). The personal representative of the Estate and trustee of the Trust is Mr. Albart's grandson, David Albart, a citizen of Michigan. (*Id*.).

1

Defendant Lavastone is a limited liability company organized under the laws of the state of Delaware. It maintains its principal place of business in New York. (*Id*. at ¶ 7). Defendant U.S. Bank is a national banking association with its main office in Cincinnati, Ohio and its principal place of business is in Minneapolis, Minnesota. (*Id*. at ¶ 5).

### B. The Insurance Policy

In 2005, an entity known as "Coventry" procured multiple life insurance policies on the life of Mr. Albart, including the $9 million policy. (D.I. 1 ¶¶ 22). The complaint alleges that Coventry was engaged in a scheme to originate life insurance policies on the lives of persons aged 60 or older, who were expected to live fewer than fifteen years and "where the two-year incontestability period had passed."[1] (*Id*. ¶¶ 22-23). With respect to Mr. Albart, Coventry orchestrated this scheme by creating a Delaware trust with a Delaware-based trustee (Wilmington Trust Company) to hold the policy until it was sold to a third-party investor.[2] (*Id*. ¶¶ 27-29). The policy was issued to the Delaware trust at the address of its Delaware trustee in Delaware. (*Id*.).

At the time, Coventry and Lavastone were parties to an origination agreement, under which Coventry was required to sell, and Lavastone to buy, policies that met certain eligibility criteria. (*Id*. ¶¶ 25-26). Pursuant to that agreement, Lavastone acquired the $9 million policy from Coventry. Consequently, when Mr. Albart died in April 2017, Lavastone received the $9 million death benefit. (*Id*. ¶¶ 31-32). Lavastone obtained the $9 million through a securities intermediary, Defendant U.S. Bank. (*Id*. ¶ 32).

---

[1] I think the complaint means that the two-year incontestability period was expected to pass before the insured died. An incontestability clause in a life insurance contract generally precludes an insurer from challenging the enforceability of a policy after it has been in effect for a stated period (typically two years) based upon misrepresentations made by the insured in the application.

[2] The Delaware trust to which the insurance policy was issued is not the same as the plaintiff Florida trust.

### C. The Litigation

On January 7, 2020, then-counsel for the Estate sent a letter to U.S. Bank. (D.I. 8-2 ¶¶ 38-39). Based on this letter, Lavastone believed that the Estate "intend[ed], in the very near future, to file a suit in Delaware state or federal court against Lavastone … seeking a declaratory judgment that the Policy Proceeds be paid to the Estate." (*Id.*). Between January 2020 and March 2020, Lavastone, the Albart family, and counsel for Estate exchanged communications where the Estate described preparing to file a lawsuit naming Lavastone. (D.I. 10-2, D.I. 10-3).

On April 30, 2020, Lavastone filed an anticipatory declaratory action in Florida state court (the "Florida Action") seeking a declaration that Lavastone is the rightful owner of any proceeds from the $9 million insurance policy and that any action to adjudicate the rights of the policy proceeds should occur in Florida and be governed by Florida law. (D.I. 8-2 ¶¶ 43-56). On May 4, 2020, the Estate filed this lawsuit in Delaware (the "Delaware Action"). (D.I. 1).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive the motion to dismiss, the complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Twombly*, 550 U.S. at 555. In assessing the plausibility of a claim, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, documents

incorporated by reference, and items subject to judicial notice. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. DISCUSSION

In its opening brief, Lavastone argued that this action should be dismissed or stayed for any one of three reasons: (1) Plaintiffs lacked constitutional standing because the complaint was filed before the Florida Probate Court entered the Probate Appointment Orders appointing David Albart the personal representative of the Estate, (2) under the first-filed rule, this Court should defer to the Florida Action, which was filed first, and (3) under the doctrine of *forum non conveniens*, this action should be transferred to Florida which is the more convenient forum. (D.I. 8).

In its reply brief, Lavastone abandoned all these arguments. (D.I. 11). By abandoning its standing argument, Lavastone implicitly conceded the correctness of Plaintiffs' assertion that the timing of the appointment of an estate's personal representative does not implicate constitutional standing. (*See* D.I. 10 at 7-9 (*citing*, *e.g.*, *Estate of Manuel by & through Skaggs-Manuel v. Schroetlin*, 2018 WL 1427209, at *5 (D. Colo. Mar. 22, 2018))). And, in any event, timing was not an issue here because the Probate Appointment Orders relate back to the date of decedent's death, which was before the complaint was filed. (*See* D.I. 10 at 7-9 (citing Fla. Stat. § 733.601)). Further, Lavastone explicitly stated that Plaintiffs were "correct" in asserting that courts apply *Colorado River* abstention, not the first-filed rule or the *forum non conveniens* doctrine, in situations like the one here where there is simultaneous litigation of similar issues in both state and federal courts. (D.I. 11 at 1).

Although Lavastone admits that the *Colorado River* doctrine governs this dispute, its reply brief primarily makes arguments based on *ad hominem* attacks and factual assertions with no

4

reference to a specific legal principle or doctrine. (*See* D.I. 11 at Sections I - III). Because these arguments are not helpful, the Court will not dwell on them.[3] Thus, the Court is left with Lavastone's last argument – that "jurisprudential considerations weigh in favor of dismissal." (*Id*. at Section IV). Lavastone does not make clear that this argument is based on the *Colorado River* doctrine, but its citations to *Ingersoll-Rand* and *Benedict* suggest that is the case. (*Id*., citing *Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 134 (3d Cir. 1988); *Benedict v. JPMorgan Chase Bank*, 2016 WL 310752, at *4 (D.N.J. Jan. 26, 2016)). Accordingly, the Court turns to the *Colorado River* doctrine.

"The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment." *Univ. of Maryland at Balt. v. Peat Marwick Main & Co.*, 923 F.2d 265, 275–76 (3d Cir. 1991). Abstention under the *Colorado River* doctrine is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). The party attempting to invoke abstention "bears the heavy burden" of demonstrating its applicability. *MBIA Ins. Corp. v. Royal Indem. Co.*, 294 F. Supp. 2d 606, 615 (D. Del. 2003).

---

[3] For the *ad hominem* attacks, Lavastone asserts that (i) in commencing this action, Plaintiffs "misrepresented the status of the estate," and (ii) Plaintiffs engaged in "sharp conduct with respect to service." (D.I. 11 at 2-3). But Lavastone has not shown that either assertion, even if true, would warrant the sanction of dismissal. More important, the Court harbors doubt that Lavastone itself has not engaged in "sharp conduct" with respect to this litigation.

For the factual arguments, Lavastone asserts that "the Florida connections predominate the relevant transactions." (*Id*. at 3). But this assertion appears to be nothing more than a self-serving characterization, particularly when the complaint asserts a statutory claim under Delaware law based on a life insurance originally issued by Coventry to a Delaware trust and delivered in Delaware to a Delaware trustee to hold until it was sold to a third-party investor, i.e., Lavastone, which is a Delaware company based in New York. (D.I. 1 ¶¶ 25-29). More importantly, even if Lavastone were able to show that Florida connections "predominate," it did not point to any legal doctrine that would require dismissal based on such predominance. (*See* D.I. 11 at 3).

The first step in the abstention analysis under the *Colorado River* doctrine is to determine if the federal and state proceedings are "parallel." *Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Estate of Shaffer*, 629 F. App'x 348, 350 (3d Cir. 2015). The two proceedings are considered parallel when they involve the same parties, substantially identical claims, and seek the same remedies. *Id*. Here, there is no dispute that the proceedings are parallel.

If the proceedings are parallel, then the Court balances the following factors:

> (1) in an in rem case, which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Id*. (quotation marks and alteration omitted). Lavastone, however, failed to address these six factors in a complete and coherent manner.

To start, Lavastone recites some facts regarding a second action in Florida that it calls the "LP Action," but does not explain to which factor these facts go and does not cite any supporting authority showing that these facts weigh in favor of abstention. (*See* D.I. 11 at 5). In addition, Lavastone submits these facts, which are outside the pleadings, without explaining by which mechanism the Court may consider them and without citing to any declaration or exhibit demonstrating their truth. (*Id*.). Finally, Lavastone's description of the LP Action is short on specifics, which leaves the Court unclear as to how exactly it overlaps with and differs from this action. Accordingly, the Court is unsure how exactly to weigh the existence of the LP Action in its analysis.

Lavastone does make an argument under the fifth factor – whether federal or state law controls. (*Id*. at 6). According to Lavastone, there is some dispute as to whether Florida law or Delaware law will apply, but there is no dispute that federal law will not apply. (*Id*.). Lavastone, however, does not explain how the claims in Plaintiffs' complaint depend on Florida law and the

Court cannot guess as to a reason why. The first claim is brought under a Delaware statute, 18 *Del. C.* § 2704. The second claim, asserted in the alternative, is for unjust enrichment, a common law claim recognized under Delaware state law. *See*, *e.g.*, *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

If Delaware law governs Plaintiffs' claims, then the fifth factor does not weigh in favor of abstention, because this Court routinely applies Delaware law. *See McMahon v. Refresh Dental Mgmt.*, LLC, 2016 WL 7212584, at *7 (W.D. Pa. Dec. 13, 2016) (noting that an "Ohio court certainly would have no greater ability to address issues of Pennsylvania law than would this Court," and thus "factor five weighs against abstention"). Lavastone does not explicitly address any other factor.

For the foregoing reasons, Lavastone has not carried its heavy burden of demonstrating that this case fits the narrow exception where the Court should abstain from deciding a controversy properly before it. Therefore, Lavastone's motion to dismiss is denied. (D.I. 8).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or Stay (D.I. 8) is denied. An appropriate order will be entered.